IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RICKY LOVE                                                                                    PLAINTIFF
ADC #095074

V.                                        NO. 5:05CV00325 JLH/JWC

LARRY NORRIS, et al                                                              DEFENDANTS

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**I. Instructions**

The following recommended disposition has been sent to United States District Court Chief Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of these findings and recommendations.  A copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3.    The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof,  and a copy,  or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR  72201-3325

## II.  Recommended Disposition

Plaintiff is a pro se inmate currently confined to the Wrightsville Unit of the Arkansas Department of Correction ("ADC").  On November 21, 2005, he filed this action pursuant to 42 U.S.C. § 1983 (docket entry #2).  On January 30, 2006, Defendants filed a motion for summary judgment and brief in support (docket entries #12, #13) seeking to dismiss Plaintiff's complaint on the grounds that he has failed to establish a constitutional violation. Defendants also filed a statement of indisputable relevant material facts in support of their motion (docket entry #14) pursuant to Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas.  By order entered February 1, 2006 (docket entry #15), Plaintiff was notified of his opportunity to file a responsive pleading opposing Defendants' motion, which he did on February 22, 2006 (docket entry #17).

## III.  Background

According to Plaintiff, he was approved for a work release program and transferred to the Pine Bluff Unit on September 8, 2004, where he was assigned a central office porter job and given Class I-B status.  On October 12, 2004, he was given a job assignment and

2

completed in-house time in preparation for a job for pay; however, eight days later he was removed from work release, transferred to the Ouachita River Unit, and his I-B status was revoked based on a victim notification protest.  Plaintiff acknowledges that he had not yet started his job when he was removed from the program.   He contends that an impermissible criterion was used in denying him participation in the work release program (a victim notification protest) and that he satisfied the eligibility requirements under the regulations.  Plaintiff further alleges that he was informed by the Record Supervisor, Ms. Ashcraft, on November 12, 2004, that he had no victim notifications in his file (see docket entries #2, #17).  Defendants contend that Plaintiff was initially approved but then denied admittance to the work release program on October 20, 2004, prior to beginning his job on the grounds that one of his victims protested his participation (see docket entries #13, #14).  In addition, a subsequent letter to Plaintiff from Ms. Ashcraft on December 2, 2004, informed him that upon further investigation concerning his request about victims, it was discovered that he had three victims listed in his file and that one of his victims had objected to his participation in the program.   Plaintiff was deemed ineligible for work release based on this objection.  According to Defendants, standard operating procedure for work release is regulated by Act 1262 of 1997.  If a victim requests notification prior to an inmate's acceptance into the work release program, and then files an objection to the acceptance, the inmate is deemed unsuitable for participation in the program (see docket entry #14, Exh. 8).

### IV.  Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999). A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. Celotex, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. Id. at 324; Fed. R. Civ. P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993). A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment. Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994). Moreover, pro se complaints must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## V. Analysis

Defendants assert that Plaintiff has failed to state a cognizable claim because he enjoys no constitutional right to participate in a work release program. They are correct. Plaintiff's challenge to the denial of his admittance to the work release program, after initial approval but prior to beginning his job, fails because he had no liberty interest in work release participation at that point. To state a cognizable claim for denial of due process, Plaintiff must be able to allege the loss of a protected liberty interest to which due process

4

protections apply.  Analysis of Plaintiff's claim begins with <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  Under <u>Sandin</u>, a liberty interest is implicated and thus triggers due process protections, when an inmate is restrained in such a way that it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and represents "a dramatic departure from the basic conditions" of the inmate's confinement. <u>Id</u>. at 484-85.

Under <u>Sandin</u>, this Court must initially ascertain whether the discipline imposed, or, in this case, whether the privilege denied, either represented "a dramatic departure from the basic conditions" of Plaintiff's confinement or exceeded similar, but totally discretionary, restraints in either duration or degree of restriction.  <u>Id</u>. at 485-86.  To measure whether the particular restrictions imposed on an inmate are atypical and significant, <u>Sandin</u> instructed courts to consider the following three factors: 1) the effect of the segregation on the length of prison confinement; 2) the extent to which the conditions of the segregation differ from other routine prison conditions; and 3) the duration of the segregation imposed compared to discretionary confinement.  <u>Id</u>. at 484.

Arkansas prisoners' participation in work release programs is codified in Ark. Code Ann. § 12-30-401 and states:

> (a) All inmates committed to the Department of Correction for institutional care shall be required to participate in the various work programs to which assigned and <u>may be</u> afforded vocational training and rehabilitative opportunities in accordance with rules, regulations, and procedures therefor as promulgated by the Director of the Department of Correction with the approval of the Board of Corrections.
>
> (b) The department <u>may</u> institute "work-release" programs under which the inmates selected to participate in the programs <u>may</u> be gainfully employed or attend school outside of the units maintained by the department, under

rules and regulations promulgated by the director with the approval of the board.

(emphasis added). The ADC's Work/Study Release Program allows for "the orderly reintegration of selected inmates from a prison environment back into communities through participation in a community or unit/center Work/Study Release Program. Only inmates who meet the eligibility criteria for Work/Study Release <u>may be considered</u> for placement in a Work/Study Release Program." (<u>see</u> docket entry #17, Attached Exhibit; Administrative Regulation § 1200(IV)) (emphasis added). Inmates eligible for the ADC's work/study release program are to submit a "Work/Study Release Application" form to the Classification Officer and/or Work Release Warden/Center Supervisor. If the applicant meets the criteria for eligibility, the Classification Committee will consider the application and forward its recommendation to the Warden/Center Supervisor. The decision of the Classification Committee must be unanimous before a favorable recommendation is forwarded to the Warden/Center Supervisor. <u>Id</u>. § 1200(V)(C)(1). Work/Release Wardens/Supervisors will have final approval of all Work/Study Release Program applicants. <u>Id</u>. § 1200(V)(C)(5). A reading of both the statute and regulation at issue makes clear that work release is a privilege granted an inmate under prescribed conditions, not a reward for good behavior. Moreover, the wording of the statute, as well as the work/study release program regulation itself, is discretionary— an inmate <u>may</u> be considered for placement in a work/study release program, an inmate is not <u>entitled</u> to placement in a work/study release program. Furthermore, the regulation gives work/release Wardens/Supervisors absolute discretion in final approval of all work/study release program applicants.

Act 1262 of 1997 (vesting authority in the Board of Correction to promulgate Administrative Regulation § 1200) is codified in part in Ark. Code Ann. § 16-90-1109 (information concerning confinement) and states in relevant part:

> (a) Upon request of the victim, the Department of Correction, Arkansas State Hospital, and any other facility to which the defendant is committed by the court shall:
>
>> (1) Promptly inform the victim of the estimated date of the defendant's release from confinement, if reasonably ascertainable;
>>
>> (2) Inform the victim at least thirty (30) days before release of the defendant on furlough or to a work-release, halfway house, or other community program; . . . .

According to Ark. Code Ann. § 16-90-1101(8) "victim" means a victim of a sex offense or an offense against a victim who is a minor and a victim of any violent crime.  Act 1262 identifies which victims are required by law to be notified, it does not preclude notification of a work release application to other victims of a crime (see docket entry #14, Exh. 5).  It is the ADC's practice to notify anyone who has requested notification (see docket entry #14, Exh. 6).  Plaintiff contends that he satisfied the eligibility requirements under the regulations and that his work release was revoked prior to beginning his job based on an impermissible criterion (a victim notification protest).  According to Defendant Toney, denial of participation in work release can be based on Act 1262 of 1997 and is in the discretion of the administration, which is responsible for addressing the concerns of victims (see docket entry #14, Exh. 3).  Plaintiff has challenged the contested revocation through the ADC's administrative grievance procedure.

"[T]here is no constitutionally based liberty interest in participating in a work release program."  See Mahfouz v. Lockhart, 826 F.2d 791, 792 (8th Cir. 1987) (per curiam) (citing

Johnson v. Stark, 717 F.2d 1550 (8th Cir.1983) (per curiam); Matz v. Kelsch, 638 F.2d 48

(8th Cir.1981) (per curiam)).  However, "a state may create such a liberty interest when its

statutes or regulations place substantive limitations on the exercise of official discretion or

are phrased in mandatory terms."  See Id. (citing Bd. of Pardons v. Allen, 482 U.S. 369

(1987); Olim v. Wakinekona, 461 U.S. 238, 249 (1983); Greenholtz v. Inmates of Nebraska

Penal & Corr. Complex, 442 U.S. 1, 11-12 (1979); Parker v. Corrothers, 750 F.2d 653, 657

(8th Cir.1984)).  Based on the permissive non-mandatory language of the Arkansas state

statute authorizing such programs, the Mahfouz court specifically held that "[A]rkansas'

work release statutes and regulations do not create a protectible liberty interest" in

participation in such programs.  Mahfouz, 826 F.2d at 793.  "Although the regulation

contains substantive criteria to be used in determining *eligibility* for the work release

program, the unit warden, assistant director, director, and Board retain broad discretion in

*selecting* eligible inmates to participate in the program.  Id.

A distinction is recognized when an inmate is fully and genuinely participating in

such a program.  In Arkansas, inmates participating in a work release program enjoy a

vested interest in remaining in such a program and are thus entitled to due process

protection before that status may be constitutionally revoked.  See Edwards v. Lockhart,

908 F.2d 299, 302-03 (8th Cir. 1990) (emphasis added).  "A liberty interest inherent in the

Constitution arises when a prisoner has acquired a substantial, although conditional

freedom such that 'the loss of liberty entailed [by its revocation] is a serious deprivation

requiring that the [prisoner] be accorded due process'".  Id. at 301 (citing Whitehorn v.

Harrelson, 758 F.2d 1416, 1420 (11th Cir.1985) (footnote omitted) (quoting Gagnon v.

Scarpelli, 411 U.S. 778, 781 (1973)); see also Jackson v. Lockhart, 7 F.3d 1391, 1393 (8th

Cir. 1993).   That interest, however, does not extend to an inmate who alleges a constitutional violation based on the denial of the opportunity to participate in a work release program.

First, Plaintiff has no federal constitutional right to participate in a work release program.   Second, Arkansas' work release statute and regulation do not create a liberty interest protected by the Due Process Clause.   The regulation itself contains no mandatory language directing that officials must grant admission to a work release program to any inmate who satisfies the eligibility requirements.   In truth, the decision whether to grant a prisoner work release under the regulation is entirely discretionary.   Third, Plaintiff's participation in the work release program was revoked prior to beginning a job— he never actually began working.   In other words, the issue of what process was due had Plaintiff already begun working, which does involve some measure of liberty greater than that at issue here, did not apply to his situation.   Moreover, Plaintiff had not been released from an institutional setting— he had merely been transferred to the ADC's Pine Bluff Unit. Fourth, assuming for the sake of argument that a liberty interest was in fact created, Plaintiff received due process.   He was able to appeal the work release revocation through several administrative levels, which he did.   Last, and most significant, the denial of participation in a work release program is not truly punitive.   It essence, it merely relegates the prisoner to the conditions of confinement of the sentence originally imposed.   Standing alone it certainly cannot be said to constitute an "atypical and significant hardship" in relation to what can reasonably be expected in the prison environment, and, most assuredly was not a "dramatic departure from the basic conditions" of Plaintiff's

confinement.  For these reasons, Plaintiff's Fourteenth Amendment due process claim should be dismissed.

## VI.  Conclusion

In accordance with the above, IT IS, THEREFORE, RECOMMENDED that:

1.      Defendants' motion for summary judgment (docket entry #12) should be GRANTED and Plaintiff's complaint should be dismissed in its entirety WITH PREJUDICE.

2.      Any remaining pending motions should be DENIED AS MOOT.

3.      The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any order adopting this recommendation, and any judgment entered thereunder, would not be taken in good faith.

DATED this 21st day of August, 2006.

_____
UNITED STATES MAGISTRATE JUDGE